## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## ALBANY DIVISION

HAZEL WHITE,                                  :
                                              :
     Plaintiff,                             :
                                              :   CASE NO.: 1:14-CV-00076 (LJA)
v.                                            :
                                              :
CITY OF SYLVESTER, GEORGIA,                   :
                                              :
     Defendant.                             :
_____              :

## <u>ORDER</u>

Before the Court is Defendant City of Sylvester, Georgia's Motion to Dismiss Plaintiff Hazel White's Amended Complaint. (Docs. 13 and 12). For the reasons set forth below, Defendant's Motion, (Doc. 13), is **granted in part** and **denied in part**.

## I.  <u>PROCEDURAL BACKGROUND</u>

On or about November 20, 2012, Plaintiff Hazel White, a female police officer, filed a Charge of Discrimination ("Charge One") with the Equal Employment Opportunity Commission ("EEOC") against her employer, the City of Sylvester, Georgia ("the City of Sylvester") alleging discrimination based on race, sex, disability and retaliation.[1] (Doc. 13-1). On September 25, 2013, the EEOC issued a right-to-sue letter to Plaintiff related to Charge One and informed Plaintiff that her lawsuit had to be filed within ninety days from the receipt of that letter. (Doc. 5-2).

On or about August 9, 2013, prior to her receipt of the right-to-sue letter from the EEOC on Charge One, Plaintiff filed a second Charge of Discrimination with the EEOC ("Charge Two"). (Doc. 13-2). In Charge Two, Plaintiff alleged that:

> In retaliation for [filing Charge One,] and in continuing disparate treatment due to her race, gender and disability, Defendant has continued to treated [sic] Plaintiff unfavorably and subjected [sic] her to a hostile work environment[,] specifically[,] but not limited to[,] unwarranted written and verbal reprimands

---

[1] While Plaintiff alleged discrimination based on race, she alleges no facts and puts forth no arguments to support a claim of race-based discrimination.

and disciplinary actions; sexual comments by staff; contrived allegations of citizen complaints; accusations of tardiness; [and] GPS tracking of Plaintiff by Defendant. On May 21, 2013, Plaintiff filed an internal complaint against Defendant for hostile work environment, retaliation and sexual harassment by Lt. Ronnie Graddy and failure of Chief Robert Jennings to provide corrective action. As of July 10, 2013, Plaintiff was released back to full duty by her doctor and Plaintiff continues her job duties as of the date of this new charge.

(Doc. 13-2).  On July 16, 2014, the EEOC issued a right-to-sue letter to Plaintiff related to Charge Two and informed Plaintiff that her lawsuit had to be filed within ninety days from the receipt of that letter.  (Doc. 7-1).

On May 13, 2014, Plaintiff filed the original complaint in the instant lawsuit based on Charges One and Two, claiming disability discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"); gender discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); and violations of the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA").  (Doc. 1). On July 7, 2014, Defendant moved to dismiss Plaintiff's claims in part because Plaintiff's claims were time-barred and because the claims related to Charge Two had been filed prematurely.  (Doc. 5).  On August 15, 2014, Plaintiff responded to Defendant's motion to dismiss Plaintiff's original complaint and conceded that her ADA and Title VII claims related to Charge One were time-barred because Plaintiff failed to file Charge One within 180 days of the allegedly discriminatory predicate acts, as required by 42 U.S.C. § 2000e–5(e)(1).[2]  (Doc. 7 at 2).  Plaintiff also conceded that she "did not plead sufficient facts to bring [her FMLA] claims within the three-year statute of limitations for willful FMLA violations," so "to the extent that any of her FMLA claims are based on her FMLA leave taken in April[,] 2012 for a miscarriage, they are subject to dismissal" because they were not filed "within two years of that date."  (*Id.* at 2 n. 1).[3]

On November 7, 2014, the Court issued an Order on the Motion to Dismiss Plaintiff's original complaint. (Doc. 11).  The Court found that Plaintiff's claims based on Charge Two were filed prematurely.[4]  (*Id.* at 3).  Further, noting Plaintiff's concession that ADA and Title

---

[2] A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred.  *See* 42 U.S.C. § 2000e-5(e)(1).
[3] Absent a claim for a willful violation of the FMLA, 29 U.S.C. § 2617(c)(1) prescribes a two-year statute of limitation for FMLA claims.
[4] Generally, after filing a charge of discrimination with the EEOC, an individual must wait until he or she receives a right-to-sue letter from the EEOC and then must bring suit on the related claims within 90 days of receiving the letter. *See* 42

VII claims based on Charge One were time-barred, the Court found that because 42 U.S.C. § 2000e-5(e) requires that charges of discrimination be brought within 180 days of an unlawfully discriminatory act, the Court held that, "Charge Two, the only charge of discrimination upon which [Plaintiff] relies, was filed on August 9, 2013. Therefore, [Plaintiff] can only bring suit for discriminatory acts that took place between February 9, 2013 and August 8, 2013." (*Id.*)  Finding that Plaintiff's original complaint, "as it now stands[,] does not specifically state facts regarding any acts allegedly taken by [Defendant] during the referenced time period[,]" the Court applied the doctrine of equitable modification.  (*Id.*)  *See Forehand v. Fla. State Hosp. at Chattahoochee*, 89 F.3d 1562, 1569-70 (11th Cir. 1996)(noting that "receipt of a right-to-sue letter is not a jurisdictional prerequisite to suit, but rather, is a statutory precondition which is subject to equitable modification.").  Accordingly, the Court granted Plaintiff leave to amend her original complaint and denied the motion to dismiss as moot.  (Doc. 11 at 3).

On November 21, 2014, Plaintiff filed the Amended Complaint claiming disability discrimination under the ADA (Count I); gender discrimination and retaliation under Title VII (Counts II and III); and violations of the FMLA (Count IV).  (Doc. 12).  On December 5, 2014, Defendant moved to dismiss Plaintiff's claims on the bases that: (1) some of Plaintiff's Title VII and ADA claims are time barred; (2) some of Plaintiff's Title VII and ADA claims are beyond the scope of Charge Two; (3) Plaintiff's FMLA claims are barred by the statute of limitations; and (4) Plaintiff fails to plead sufficient facts to state a claim for relief under Title VII, the ADA, or the FMLA.  (Doc. 13).  On December 29, 2014, Plaintiff responded by formally withdrawing her ADA claim but opposing Defendant's remaining bases for dismissal.  (Doc. 14).  On January 29, 2015, Defendant filed its Reply.  (Doc 16).  Accordingly, Defendant's Motion to Dismiss Plaintiff's Amended Complaint is now ripe for review.

## II.  <u>FACTUAL BACKGROUND</u>[5]

### A.  Facts regarding events between 2010 and 2012

On May 10, 2010, Defendant City of Sylvester hired Plaintiff Hazel White as a police

---

U.S.C. § 2000e-5(f)(1).  Plaintiff filed Charge Two with the EEOC on August 9, 2013 and the original complaint with the Court on May 13, 2014, but the EEOC did not issue its right-to-sue letter on Charge Two until July 16, 2014. As such, the Title VII claims in Plaintiff's original complaint based on upon Charge Two were prematurely filed.

[5] As discussed in Section I, supra, the Court previously ruled that Plaintiff "can only bring suit for discriminatory acts that took place between February 9, 2013 and August 8, 2013.".  See (Doc. 11 at 3). Nevertheless, as discussed in Section IV(B),

officer. (Doc. 12 ¶ 6). Periodically, Plaintiff was assigned to work at Worth County Middle School ("the Middle School") and at various athletic events in and proximate to Sylvester, Georgia. (*Id.* ¶¶ 12, 33, 44). Throughout the course of Plaintiff's tenure, Lieutenant Ronnie Graddy ("Lt. Graddy") and Chief of Police Robert Jennings ("Chief Jennings"), who both held a higher rank than Plaintiff, were Plaintiff's supervisors. (*Id.* ¶¶ 12, 13, 32, 35, 39, and 43). Plaintiff remains an employee of Defendant. (*Id.* ¶ 51).

Between January, 2011, and July 18, 2011, Lt. Graddy began touching and speaking to Plaintiff in ways that made her uncomfortable. Specifically, Lt. Graddy touched Plaintiff on and near the small of her back, placed his chin on her shoulder and his cheek on the side of Plaintiff's face. (*Id.* ¶ 8). Lieutenant Graddy also called Plaintiff "sweetie" and "hun." (*Id.* ¶ 9). On several occasions, Plaintiff told Lt. Graddy that she did not like other people invading her personal space and that his actions made her uncomfortable, but Lt. Graddy persisted with his advances. (*Id.* ¶ 10). On one occasion when she told him to stop, Lt. Graddy replied, "oh, I'm just friendly" and continued to touch her. (*Id.* ¶ 8).

On November 2, 2012, Plaintiff filed a written complaint against Lt. Graddy with Chief Jennings and City Manager Bridges. (*Id.* ¶ 28). On November 6, 2012, Plaintiff met with City Manager Bridges and Chief Jennings and recounted all incidents that had occurred between her and Lt. Graddy, including Lt. Graddy's initial opposition to a request Plaintiff made for FMLA leave in April, 2012, which the Court discusses below in Section C. (*Id.*) During that meeting, Plaintiff expressed her belief that Lt. Graddy's actions were in retaliation for her April, 2012, leave request, her previous rejection of his advances, and her complaints about his behavior. (*Id.*) In response, Chief Jennings and City Manager Bridges told Plaintiff that she needed to pray for, and forgive, Lt. Graddy. (*Id.* ¶ 29). On or about November 20, 2012, Plaintiff filed Charge One with the EEOC, claiming discrimination on the basis of race, sex, retaliation, and disability. (*Id.* ¶ 30).

**B. Facts Related to Counts II and III**

At some point, Plaintiff began dating an officer with whom she worked, Kenny Eaton ("Officer Eaton"). (*Id.* ¶ 27). Neither Party has alleged that this relationship was against Department policy. On September 14, 2012, Plaintiff was assigned to a football game in Tifton, Georgia. (*Id.* ¶ 21). During the assignment, Plaintiff asked Lt. Graddy if she could

---

infra, the Court will consider these allegations as background or context for Plaintiff's timely Title VII allegations.

leave early to spend time with her daughter.  (*Id.*)  Lieutenant Graddy told Plaintiff to put her time on her time card and granted Plaintiff permission to leave early.  (*Id.*)  Later that evening, Lt. Graddy called Plaintiff and asked whether she had arrived at home.  (*Id.* ¶ 22).  After Plaintiff told Lt. Graddy that she had not yet arrived at home but was with her mother, Lt. Graddy told Plaintiff, "'you're a liar'! Two police officers saw Kenny Eaton pick you up from the Police Department. You told me you were going to spend time with your daughter[,] so you lied to me!"  (*Id.*)  Lt. Graddy screamed and cursed at Plaintiff for several minutes before hanging up the phone.  (*Id.*)  On September 17, 2012, Plaintiff complained to Chief Jennings about Lt. Graddy's actions on September 14, 2012.  (*Id.* ¶ 23).  No disciplinary action was taken against Lt. Graddy.  (*Id.*)

On March 18, 2013, while Plaintiff was working at the Middle School, Sergeant Duncan, at the direction of Lt. Graddy, verbally counseled Plaintiff based on documented instances in which Plaintiff reportedly: (1) arrived to work late on three occasions; (2) left work early after providing a doctor's note indicating that she was ill; (3) left work fifteen minutes early to pick up her child; (4) worked overtime without approval; and (5) drove her patrol car at speeds recorded as excessive on its GPS tracking device.  (*Id.* ¶ 31).  Sergeant Duncan required Plaintiff to sign a written counseling form for placement in her personnel file.  (*Id.*)  Later that day, Sgt. Duncan informed Plaintiff that Lt. Graddy generally did not track officers using GPS devices on their patrol cars.  (*Id.* ¶ 32).

Plaintiff also alleges that the sexual harassment continued, citing an incident in which Lt. Graddy told Plaintiff that her fingernails were "sexy" while Plaintiff was on duty at an athletic event.  (*Id.* ¶ 33).  Plaintiff also alleges that, in addition to tracking her on GPS, Lt. Graddy also singled her out by instructing her to report to the county Health Department for a random drug screening on March 29, 2013.  (*Id.* ¶ 34).

In early April, 2013, Plaintiff alleges that Lt. Graddy's attention was increasingly focused on the nature of Plaintiff's personal relationship with Officer Eaton.  (*Id.* ¶ 35).  During that same time, Plaintiff was promoted to the rank of Sergeant.  (*Id.*)  In various employee meetings and direct conversations with Chief Jennings and Lt. Hall, Lt. Graddy discussed Plaintiff's relationship with Officer Eaton.  (*Id.*)  During one such conversation, Chief Jennings indicated that Plaintiff "would not be a sergeant for long" if Plaintiff did have an ongoing personal relationship with Officer Eaton.  (*Id.*)  Plaintiff does not allege that she

was demoted her from the rank of Sergeant.  On April 18, 2013, Lt. Graddy forbade Officer Eaton to attend a meeting in Albany, Georgia because he believed that Officer Eaton was dating Plaintiff and he did not want both of them at the meeting.  (*Id.* ¶ 36).  On April 22, 2013, Lt. Hall upbraided Officer Eaton for "backing up" Plaintiff at work and "hanging around" with her.  (*Id.* ¶ 37).

On April 23, 2013, Sgt. Duncan warned Plaintiff that Lt. Graddy noticed that Plaintiff arrived at work late on the two preceding days and was actively looking for reasons to demote Plaintiff or fire her.  (*Id.* ¶ 38).  Later that day, when Lt. Graddy learned that Sgt. Duncan had only issued Plaintiff an informal warning for her late arrival, Lt. Graddy counseled Plaintiff verbally and in writing for ten instances of lateness, as determined through GPS tracking.[6]  (*Id.* ¶ 39).  On April 29, 2013, Plaintiff filed a written appeal with Chief Jennings based on her interaction with Lt. Graddy on April 23, 2013.  (*Id.* ¶ 43).  The next day, without meeting with Plaintiff or reviewing any documentation in support of her appeal, Chief Jennings responded to Plaintiff by letter, requiring that Plaintiff submit a letter indicating how she would "fix the issue."  (*Id.*)

On April 27, 2013, Sgt. Duncan told Plaintiff that Lt. Graddy "is driving me crazy calling to have me write you up all the time."  (*Id.* ¶ 41).  Sergeant Duncan stated that he had not observed any conduct that warranted such action.  (*Id.*)  Sergeant Duncan informed Plaintiff that Lt. Graddy was only reviewing the GPS tracking records of Plaintiff and Officer Eaton and was doing so on a daily basis.  (*Id.*)  Sergeant Duncan also told Plaintiff that Lt. Graddy's behavior was driven by jealousy that Plaintiff was dating Officer Eaton.  (*Id.*)

In May, 2013, Lt. Graddy began asking other officers in the department about Plaintiff's relationship with Officer Eaton on a daily basis.  (*Id.* ¶ 44).  Officer Eaton was ordered to stop training Plaintiff on the use of a laser device in support of Plaintiff's certification in speed detection, and Lt. Graddy told Lt. Jones to forbid Officer Eaton from visiting the Middle School, where Plaintiff was posted, "even if there is a shooting there." (*Id.*)  Lieutenant Jones also reprimanded Plaintiff for training on the laser device when she "should have been inside the school."  (*Id.*)  Plaintiff alleges that Sgt. Duncan, who was also assigned to the school, was never reprimanded when he was absent from the posting and

---

[6] Plaintiff disputes the accuracy of the GPS system on which Lt. Graddy relied.  *See* (Doc. 12 ¶¶ 39 and 40).

was actually encouraged to fulfill duties outside the school.  (*Id.*)  Additionally, when Plaintiff met with Lt. Hall to complain about the harassment, Lt. Hall told her that "everyone is starting to see that" and advised her to take her complaints to City Manager Bridges if Chief Jennings failed to help her.  (*Id.* ¶ 45).

On or about May 20, 2013, Plaintiff was asked to take a voluntary "VIPER" test related to a damaged laser device.  (*Id.* ¶ 46).  Plaintiff, on the advice of her PBA representative, refused to take the test.  (*Id.*)  Lieutenant Jones ordered Plaintiff to take the test and informed her that any refusal would be construed as insubordination and cause for termination.  (*Id.*)  After Plaintiff requested a copy of the test, Investigator Shiver instructed Plaintiff to wait ten days before requesting a copy from Chief Jennings in writing.  (*Id.*)

On May 21, 2013, Plaintiff called in sick and visited her doctor, who recommended that Plaintiff take medical leave for no less than thirty (30) days due to stress.  (*Id.* ¶ 47).  Plaintiff requested and was granted FMLA leave.  (*Id.*)  That same day, Plaintiff filed an internal complaint with City Manager Bridges, four members of the City Council, and the Mayor of the City of Sylvester ("the Mayor") against Defendant on the bases of hostile work environment, retaliation and sexual harassment by Lt. Graddy and Chief Jennings' failure to provide corrective action.  (*Id.* ¶ 48).  On June 10, 2013, Plaintiff met with Cathy Wise and Tommy Bozeman, who were assigned to investigate her internal complaint.  (*Id.* ¶ 49).  They indicated that their investigation was proceeding and would involve interviews with other officers.  (*Id.* ¶ 49).  In her Amended Complaint, Plaintiff does not provide any facts regarding the outcome of this investigation.

### C.  Facts Related to Count IV

Plaintiff requested FMLA leave on two separate occasions: on or about April 10, 2012, and again on May 21, 2013.  (Docs. 12 ¶¶ 12, 47; and 13-3 at 3).  On or about April 10, 2012, after being cautioned by her doctor that she was at risk of having a miscarriage, Plaintiff submitted a request for two to six weeks of FMLA leave to Lt. Graddy.  (Docs. 12 ¶ 12; and 13-3 at 3).  Lieutenant Grady denied Plaintiff's request.  (Doc. 12 ¶ 12).  Under duress, Plaintiff submitted a letter of resignation to Chief Jennings, telling him that she did not want to resign but that she felt she had to because of Lt. Graddy's decision to deny her request for leave.  (*Id.* ¶ 13).  Chief Jennings did not reverse Lt. Graddy's decision; rather, he accepted Plaintiff's resignation.  (*Id.*)  Both Lt. Graddy and Chief Jennings were familiar with FMLA

leave as both previously had approved FMLA leave for other employees.  (*Id.* ¶¶ 12 and13).

Plaintiff ultimately was allowed to take FMLA leave because City Manager Debbie Bridges ("City Manager Bridges") overruled Chief Jennings and Lt. Graddy after Chief Jennings brought the matter to her attention.  (*Id.* ¶ 14).  City Manager Bridges told Chief Jennings that the FMLA entitled Plaintiff to the requested leave and that Plaintiff should never have been told otherwise.  (*Id.*)  Chief Jennings returned Plaintiff's resignation letter.  (*Id.* ¶ 15).  Plaintiff then filled out the paperwork in support of her leave request, and took two weeks of FMLA leave.  (*Id.*)  Plaintiff alleges that she only took two weeks of leave because her supervisors pressured her to return to work.  (*Id.*)

On May 3, 2012, Plaintiff learned of an opportunity for a promotion to the position of Corporal.  (*Id.* ¶ 17).  She applied for the position, but was denied.  (*Id.*)  Later, Plaintiff "was told that she did not get the promotion because of sick leave issues."  (*Id.*)

On May 21, 2013, Plaintiff called in sick and visited her doctor.  (*Id.* ¶ 47).  Plaintiff's doctor ordered that Plaintiff be placed on medical leave for a period not less than thirty (30) days, due to the stress of the work environment to which she was being subjected.  (*Id.*)  On this occasion, Plaintiff was granted FMLA leave.  (*Id.*)

## III.  **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) allows a party to assert the defense of failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss under Rule 12(b)(6), the complaint must plead enough facts to state a claim for relief that is plausible—not just conceivable—on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Restated, "the factual allegations in the complaint must possess enough heft to set forth a plausible entitlement to relief."  *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (internal citation and punctuation marks omitted).

On a motion to dismiss, the Court "construes the complaint in the light most favorable to the plaintiff and accepts all well-pled facts alleged [] in the complaint as true."  *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009), abrogated on other grounds by *Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702 (2012). The "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While notice pleading is a liberal standard, "it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. A "plaintiff's obligations to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted).  Moreover, when evaluating the sufficiency of a complaint, the Court must "make reasonable inferences in plaintiff's favor;" however, the Court is "not required to draw plaintiff's inference[s]." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (quoting *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005)), abrogated on other grounds by *Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702 (2012).

Generally, "[i]f a district court considers matters outside of the pleadings when ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), then the motion to dismiss must be treated as a motion for summary judgment under Federal Rule of Civil Procedure 56." *Horne v. Potter*, 392 F. App'x 800, 802 n. 1 (11th Cir. 2010) (internal citation omitted).  However, a court may consider documents attached to the complaint and documents filed in connection with a motion to dismiss without converting the motion to a motion for summary judgment if those documents are central to the complaint and not in dispute.  *See Harris v. Ivax Corp.*, 182 F.3d 799, 802 n. 2 (11th Cir. 1999); *Horne*, 392 F. App'x at 802.  Documents are not in dispute when no party challenges the authenticity of the documents.  *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n. 3 (11th Cir. 2005) (explaining that "a document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.").

In support of its motion to dismiss Plaintiff's original complaint, Defendant attached a copy of the right-to-sue letter issued by the EEOC on Plaintiff's EEOC Charge One.  (Doc. 5-2).  In support of her response in opposition to Defendant' s motion to dismiss her original complaint, Plaintiff attached a copy of the right-to-sue letter issued by the EEOC on Plaintiff's EEOC Charge Two.  (Doc. 7-1).  In the instant Motion to Dismiss Plaintiff's Amended Complaint, Defendant has attached Plaintiff's EEOC Charge One, Charge Two, and the FMLA Certification of Health Care Provider that Plaintiff submitted to Defendant as part of Plaintiff's FMLA leave request on or about April 10, 2012.  (Doc. 13-1, 13-2, and 13-3).

These documents are central to Plaintiff's Title VII and FMLA claims, and no Party

has challenged their authenticity.   Accordingly, the Court will consider these documents without converting Defendant's Motion to Dismiss into a motion for summary judgment.  *See Harris*, 182 F.3d at 802 n. 2, *Maxcess,* 433 F.3d at 1340 n. 3.

## IV.  ANALYSIS

### A.  Count I – Americans with Disabilities Act Claim

In Plaintiff's Response in Opposition to Defendant's Motion to Dismiss Plaintiff's Amended Complaint, Plaintiff expressly abandoned her claim under the ADA in its entirety. Specifically, Plaintiff stated, "Plaintiff hereby withdraws her Count I claim for disability/perceived discrimination. . . ."  (Doc. 14 at 1).   Accordingly, the Court grants Defendant's Motion to Dismiss Count I of Plaintiff's Amended Complaint.

### B.  Count II – Title VII Claims

Plaintiff's hostile work environment and disparate treatment claims under Title VII fall within scope of the EEOC's proceedings stemming from Charge Two.  As a precondition to filing a lawsuit under Title VII, Plaintiff first had to exhaust her administrative remedies by timely filing a charge with the EEOC.  *See* 42 U.S.C. §§ 2000e-5(b), (f)(1), *Bradley v. Dekalb Cnty, Ga.*, No. 1:2010-CV-218-TWT-GGB, 2010 WL 4639240, at *3 (N.D. Ga. May 17, 2010).  This filing "serves two significant functions: (1) notification to the employer that a discrimination charge has been lodged with the EEOC; and (2) initiation of the agency's investigation of the complaint."  *Pijnenburg v. West Georgia Health System, Inc.*, 255 F.3d 1304, 1306 (11th Cir. 2001).  As such, actionable claims of discrimination in a subsequent lawsuit are generally limited to the scope of the charge filed with the EEOC.  *See Brandon v. Lockheed Martin Aeronautical Sys.* 393 F. Supp. 2d 1341, 1355 (N.D. Ga. 2005).   However, discrimination claims not explicitly identified in an EEOC charge may still be properly adjudicated in a lawsuit if they "reasonably relate" to the EEOC charge.

In *Ray v. Freeman*, the former Fifth Circuit stated:

> As long as allegations in the judicial complaint and proof are "reasonably related" to charges in the administrative filing and "no material differences" between them exist, the court will entertain them. As we have noted ..., "the 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."

Judicial claims which serve to amplify, clarify, or more clearly focus earlier

> EEO complaints are appropriate. Allegations of new acts of discrimination, offered as the essential basis for the requested judicial review are not appropriate.

626 F.2d 439, 443 (5th Cir. 1980) (citation omitted), cert. denied, 450 U.S. 997 (1981) (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)).

Furthermore, in *Wu v. Thomas*, the Eleventh Circuit stated, "[o]ne such area in which we have recognized that strict compliance with Title VII['s] [administrative exhaustion requirements] is unnecessary is where the plaintiff has filed a charge with the EEOC, but in her judicial action the plaintiff raises related issues to which no [EEOC] filing has been made." 863 F.2d 1543, 1547 (11th Cir. 1989). *See also Gregory v. Dept. of Human Resources*, 355 F.3d 1277, 1280 (11th Cir. 2004) (courts must determine whether, in her EEOC charge, a plaintiff "stated facts from which a reasonable EEOC investigator could have concluded that what she complained about is [a discriminatory, harassing, or retaliatory act explicitly omitted from the EEOC charge]."). A reasonable EEOC investigator certainly could have concluded that Plaintiff was complaining of Title VII violations in addition to complaining of unwanted retaliation in Charge Two as Plaintiff stated that she believed that, "[i]n retaliation for her filing of this charge and ***in continuing disparate treatment due to her race, gender and disability, Defendant has continued to treated [sic] Plaintiff unfavorably and subjected [sic] her to a hostile work environment***. . . ." (Doc. 13-2) (emphasis added). Plaintiff further stated, "[o]n May 21, 2013, Plaintiff filed an internal complaint against Defendant for hostile work environment, retaliation and sexual harassment by Lt. Ronnie Graddy and failure of Chief Robert Jennings to provide corrective action." (*Id.*) Plaintiff's statements in Charge Two gave the EEOC an opportunity to investigate Plaintiff's potential hostile work environment and disparate treatment claims and gave Defendant notice of these claims. As such, Plaintiff's Title VII claims in the instant lawsuit "serve to amplify, clarify, [and] more clearly focus" her claims in Charge Two. *Freeman,* 626 F.2d at 443, *see also Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir. 1983), *Pijnenburg*, 255 F.3d at 1306, *Harrison v. International Business Machines (IBM) Corp.* 378 F. App'x 950, 953 (11th Cir. 2010) (noting that, as a matter of law, a plaintiff's "discrimination claims based on sex, national origin, disparate treatment, and hostile work environment raised in the second complaint were inextricably intertwined with the retaliation claims in the third EEOC charge because they all related to events surrounding his poor

performance review and termination.").

While the Title VII claims are supported by Charge Two, Plaintiff's Amended Complaint contains numerous allegations that are time-barred. In her response to the motion to dismiss the original complaint, Plaintiff conceded that her Title VII claims based on Charge One are time-barred. *See* (Doc. 7). Even without this concession, the law is clear that Plaintiff had to file Charge One within the 180 days after the unlawfully discriminatory acts allegedly occurred and was required to initiate the instant action within ninety days of receiving her right to sue letter. *See* 42 U.S.C. § 2000e-5(e). Thus, the claims raised in Charge One are time-barred. Accordingly, applying the 180-day statutory filing requirement to Charge Two, the Court determined that the relevant period for Plaintiff's Title VII claims is February 9, 2013 to August 8, 2013. (Doc. 11 at 3).

The Statement of Ultimate Facts section of Plaintiff's Amended Complaint includes time-barred allegations of events that occurred between September 4, 2012 and November 20, 2012 and is pled in a shotgun fashion. *See* (Doc. 12 ¶¶ 18-30). In Count II (gender discrimination) and Count III (retaliation) of her Amended Complaint, Plaintiff broadly re-alleges and incorporates, without limitation, all of the facts cited in the Statement of Ultimate Facts. *See* (Doc. 12 ¶¶ 60, 61, 68, 70, and 71). Such shotgun pleading, violates Federal Rule of Civil Procedure 8(a)'s requirement of "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon it rests." Fed. R. Civ. P. 8(a). *See also Anderson v. District Bd. of Trustees of Central Florida Community College*, 77 F.3d 364, 366 (11th Cir. 1996) (shotgun pleadings make it "virtually impossible to know which allegations of fact are intended to support which claims for relief.").

While alleged acts occurring prior to February 9, 2013, will not be considered as a basis for Plaintiff's hostile work environment and disparate treatment claims, the Court will exercise its discretion to consider Plaintiff's untimely allegations as providing background or context for Plaintiff's Title VII claims. As noted by the District Court for the Northern District of Georgia, "time-barred evidence of discriminatory treatment may be used . . . to illuminate current practices which, viewed in isolation, may not indicate discriminatory motives." *E.E.O.C. v. Atlanta Gastroenterology Associates, LLC*, No. 1:05-CV-2504-TWT, 2007 WL 602212, at *14 (N.D. Ga. Feb. 16, 2007) (internal quotation marks omitted) (citing to

*Allen v. Montgomery Cnty. Ala.*, 788 F.2d 1485, 1488 (11th Cir. 1986)).  *See also United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977) (noting that a discriminatory act "may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue. . . .").

Thus, in support of her hostile work environment and disparate treatment claims, Plaintiff alleges that the following incidents occurred during the relevant period: (1) a comment from Lt. Graddy that Plaintiff's fingernails were "sexy"; (2) Lt. Graddy's discussions with an unspecified number of officers on a "daily basis" about the status of Plaintiff's personal relationship with Officer Eaton and Plaintiff's "personal life generally"; (3) Lt. Hall's admonition to Officer Eaton "against both 'backing up' Plaintiff at work and 'hanging around' with Plaintiff; (4) an order singling out Plaintiff to take a random drug test; (5) Lt. Graddy's order to other officers to write Plaintiff up for unwarranted infractions; (6) denial of an opportunity to train on a laser device because Officer Eaton was providing the training; (7) Lt. Graddy's use of GPS tracking in March, 2013 to monitor Plaintiff and Officer Eaton; (8) verbal and written counselling for "excessive tardiness" and speeding in a patrol car initiated at the direction of Lt. Graddy; (9) a verbal reprimand for not being inside the middle school while on duty; (10) failure to take action on Plaintiff's written appeal to Chief Jennings related to the verbal counseling administered by Lt. Graddy on April 23, 2013; and (11) a failure to take action after a meeting with Lt. Hall in May, 2013 during which Plaintiff complained about the harassment.  (Docs. 12 ¶¶ 31-46; and 13-2).

### 1.  Hostile Work Environment Title VII Claim

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  To state a claim for  hostile work environment gender discrimination under Title VII, a plaintiff must allege sufficient facts to establish that "(1) she belongs to a protected group; (2) she has been subjected to unwelcome sexual harassment; (3) the harassment was based on her sex; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable exists." *Hulsey v. Pride Rests., LLC*, 367 F.3d 1238, 1244 (11th Cir.2004).

Construing as true the facts alleged by Plaintiff in support of her hostile work environment gender discrimination claim, the Court finds that Plaintiff alleges sufficient facts to meet the elements of the claim. First, membership in a protected group "requires a simple stipulation that the employee is a man or woman." *Henson v. City of Dundee*, 682 F.2d 897, 903 (11th Cir. 1982). Plaintiff alleges that she is female and thus establishes that she is a member of a protected class. Second, "[i]n order to constitute harassment, [] conduct must be unwelcome in the sense that the employee did not solicit or incite it, and in the sense that the employee regarded the conduct as undesirable or offensive." *Id.* Plaintiff alleges that, over the course of six months, Lt. Graddy commented that her fingernails were "sexy," constantly tracked her patrol vehicle using GPS, and had discussions with several officers on a "daily basis" about the status of Plaintiff's personal relationship with Officer Eaton. (Doc. ¶¶ 33, 41, and 44). Plaintiff also alleges that she submitted verbal and written internal complaints to Chief Jennings, Lt. Hall and City Manager Bridges. As such, Plaintiff sets forth sufficient allegations to establish that the sexual harassment was unwelcome.

Third, actionable harassment based on sex "can be of two kinds: (1) a threatening, bellicose, demeaning, or offensive conduct; or (2) unwelcome sexual advances. . . ." *Bell v. Crackin Good Bakers, Inc.*, 777 F.2d 1497, 1503 (11th Cir. 1985). To establish that the harassment she alleges was "based on her sex" a plaintiff "must show that but for the fact of her sex, she would not have been the object of harassment." *Henson*, 682 F.2d at 904. Plaintiff alleges that Lt. Graddy called her fingernails "sexy," which may be construed as unwelcome sexual harassment in the context of Lt. Graddy's prior touching of and comments to Plaintiff despite being told by Plaintiff that his actions made her uncomfortable. *See* ( Doc. 12 ¶¶ 9, 10 and 33). *See Atlanta Gastroenterology Associates,* 2007 WL 602212, at *14 ("time-barred evidence of discriminatory treatment may be used . . . to illuminate current practices which, viewed in isolation, may not indicate discriminatory motives.") (internal quotation marks omitted). Plaintiff also alleges that, after Lt. Graddy got angry with her because he believed Plaintiff left an assignment early to spend time with Officer Eaton, he screamed and cursed at her and began monitoring the GPS tracking device on her patrol car, having discussions with other officers on a "daily basis" about the nature of her relationship with Officer Eaton, and pressuring other supervising officers to reprimand Plaintiff without cause. Plaintiff adequately alleges that but for her sex, Lt.

Graddy would not have inappropriately commented on her appearance, constantly discussed her love life with others, or singled her out for testing, tracking, or excessive reprimands.

Fourth, the inference of harassment that is sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment is raised "when an employer's conduct 'has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive environment.'" *Steele v. Offshore Shipbuilding*, 867 F.2d 1311, 1315 (11th Cir. 1989) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)). As previously discussed, Plaintiff alleges that Lt. Graddy had discussions with other officers on a "daily basis" about the nature of her relationship with Officer Eaton, was actively looking for reasons to demote or fire her, tracked the GPS on her patrol car and wrote her up and reprimanded her without cause. (Doc. 12 ¶ 41). Plaintiff also alleges that she was the only officer ordered to report for a random drug screening and that Lt. Hall admonished Officer Eaton "against both 'backing up' Plaintiff at work and 'hanging around' with Plaintiff." (*Id.* ¶ 37). Plaintiff's allegations establish that the harassment to which she was subjected was sufficiently pervasive to create an intimidating environment.

Fifth, "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate . . . authority over the employee." *Jones v. City of Lakeland,* 318 F. App'x 730, 735 (11th Cir. 2008) (quoting *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765 (1998)). The facts, as alleged by Plaintiff, establish that Lt. Graddy exercised supervisory authority over Plaintiff, and that Lt. Graddy engaged in adverse conduct that created an intimidating environment for Plaintiff. Thus, Defendant, the City of Sylvester, Georgia, is subject to vicarious liability for Lt. Graddy's conduct.

Plaintiff adequately alleges sufficient facts, occurring between February, 9, 2013 and August 8, 2013, to support a hostile work environment Title VII claim. Accordingly, the Court denies Defendant's Motion to Dismiss Plaintiff's Count II of Plaintiff's Amended Complaint based on a hostile work environment claim. To the extent that Plaintiff alleges a hostile work environment based on acts that occurred prior to February 9, 2013, or after August 8, 2013, such claims are dismissed.

### 2. Disparate Treatment Title VII Claim

Plaintiff also raises a disparate treatment claim under Title VII in Count II of her Amended Complaint. To state a claim for discrimination under Title VII, a plaintiff must allege sufficient facts to raise an inference of intentional discrimination. *See Surtain v. Hamlin Terrace Found.* 789 F.3d 1239, 1256 (11th Cir. 2005), *Hopkins v. St. Lucie Cnty School Bd.*, 399 F. App'x 563 (11th Cir. 2010). Specifically, to raise an inference of disparate treatment under Title VII, a plaintiff's allegations must show that she (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was treated less favorably than a similarly-situated individual outside her protected class. *See Hooks v. Georgia Dept. of Corrections*, 311 F. App'x 295, 297 (2009) (citing *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008)). First, as previously discussed, Plaintiff alleges that she is female and thus establishes that she is a member of a protected class. Second, Plaintiff alleges that she has been employed as a police officer since 2010 and that she was promoted to the position of Sergeant in 2013. Thus, Plaintiff's allegations arguably establish that she is qualified for the position. Third, Plaintiff alleges that, during the relevant period, she was the only officer required to report for a purportedly random drug screening and was reprimanded for training on a laser device outside the Middle School although another male officer, who was also assigned to duty inside the Middle School, was never reprimanded when he was absent. As such, Plaintiff alleges sufficient facts to establish that she was treated differently than male officers performing similar duties in similar circumstances.

Plaintiff has failed, however, to plead sufficient facts to establish that she suffered an adverse employment action. "[T]o prove [an] adverse employment action . . . an employee must show a serious and material change in the terms, condition, or privileges of employment." *Howard v. Walgreen Co.*, 605 F.3d 1239, 1245 (11th Cir. 2010) (internal quotation marks and citation omitted). Generally, a plaintiff must "establish an 'ultimate employment decision' or make some other showing of substantiality in the employment context. . . ." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (citation omitted). An "ultimate employment action" is one "such as termination, failure to hire, or demotion." *Id.* For a decision "falling short of an ultimate employment decision" to rise to the level of actionable adverse employment, however, that decision "must, in some substantial way, alter the employee's compensation, terms, conditions, or privileges of employment, deprive him or her of employment opportunities, or adversely affect his or her status as an employee."

*Id.* (internal quotation marks and citation omitted).   However, "not all conduct by an employer negatively affecting an employee constitutes adverse employment action." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1244 (11th Cir. 2001).   Indeed, Title VII is neither a general civility code nor a statute making actionable the ordinary tribulations of the work place. *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1234 (11th Cir. 2006) (internal quotation marks and citation omitted).

Plaintiff alleges that, during the relevant period, she received verbal and written counseling for "excessive tardiness" on two occasions, a reprimand for being absent from an assigned location, and that a fellow officer was ordered to stop training Plaintiff on the use of a laser device in preparation for a certification in speed detection. *See* (Doc. 12 ¶¶ 31, 38, 39, and 44).   Plaintiff fails, however, to allege how the counseling or reprimand had an adverse impact on her compensation, or the terms, conditions, or privileges of her employment. *See Crawford*, 529 F.3d at 970, *see also Hawkins v. Potter,* 316 F. App'x 957, 960 (11th Cir. 2009) (finding that three letters from plaintiff's employer citing past performance problems failed to establish adverse impact upon the terms, conditions, or privileges of plaintiff's employment in a "real and demonstrable way.") (Internal citation omitted); *Clark v. Potter*, 232 F. App'x 895, 897 (11th Cir. 2007) (adverse employment action not established where letter of warning did not cause plaintiff loss of pay, loss of grade, employment benefits or any other "tangible job effects.").   Arguably, the denial of a training opportunity could be seen as having an adverse impact on a term or privilege of employment, but Plaintiff has failed to allege sufficient facts to allow the Court to draw such an inference. Further, while Plaintiff alleges that most of the adverse actions were committed by, or ostensibly at the direction of, her supervisor, Lt. Graddy, in an effort to ultimately demote or fire her, Plaintiff does not allege that she was subsequently demoted or fired.   Because Plaintiff fails to allege sufficient facts to establish that she suffered an adverse employment action, Plaintiff fails to state a claim for disparate treatment under Title VII.   Accordingly, Plaintiff's Title VII disparate treatment claim is dismissed.

### C.  Count III – Retaliation Claim under Title VII

In Count III of her Amended Complaint, Plaintiff claims that Defendant "unlawfully retaliat[ed] [against her] after Plaintiff reported and/or opposed unlawful employment practices adversely affecting her."   (Doc. 12 ¶ 71).   Even though Plaintiff fails to state a

disparate treatment violation of Title VII, she may still establish a violation of the antiretaliation provision of Title VII. *See Sullivan v. Nat'l R.R. Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir. 1999). Under the antiretaliation provision, it is "an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing. . . ." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) some causal relation exists between the two events. *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008).

A plaintiff satisfies the first element by showing that she "had a 'reasonable belief' that an unlawful employment practice was occurring." *Wu*, 863 F.2d at 1549. Plaintiff filed Charge One and Charge Two with the EEOC alleging sexual harassment and a hostile work environment. Plaintiff also alleges that she submitted several internal complaints about Lt. Graddy's harassment. Thus, Plaintiff has established the first element, that she engaged in protected expression.

With regard to the second element, adverse actions that courts deem actionable "extend[] beyond workplace-related or employment-related retaliatory acts and harm." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). A "plaintiff [need only] show that a reasonable employee would have found the challenged action materially adverse, which in this context means it might have well dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 67 (internal quotation marks and citation omitted). In this context, the "standard of judging harm must be objective[]" but, because Title VII "does not set forth a general civility code for the American workplace," the material adversity alleged must be a significant, not a trivial harm. *Id.* at 68 (internal citation omitted). Plaintiff alleges that, during the relevant period, in retaliation for her complaints: (1) Lt. Graddy asked other officers to write her up and reprimand her, tracked her via GPS, and singled her out for drug testing; (2) Officer Eaton, presumably at the direction of Lt. Graddy, was ordered to stop training Plaintiff on the use of a laser device in preparation for a certification in speed detection; and (3) Lt. Jones, presumably at the

direction of Lt. Graddy, reprimanded Plaintiff for training on a laser device when she should have been on duty inside the Middle School and threatened Plaintiff with a charge of insubordination and possible termination if she continued to refuse to take a "VIPER" test on a laser unit although she was told initially taking the test was voluntary.  *See* (Doc. 12 ¶¶ 44 and 46).  As such, Plaintiff has alleged sufficient facts to establish that she was subjected to an adverse action that might have dissuaded a reasonable worker from making and supporting a charge of discrimination.

The third element, the "'causal link' element[,] require[s] merely that the plaintiff establish that the protected activity and the adverse action were not wholly unrelated." *Simmons v. Camden County Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir. 1985).  Plaintiff accused Lt. Graddy of sexual harassment and creating a hostile work environment.  Thereafter, Plaintiff alleges that Lt. Graddy engaged in a campaign to get her demoted or fired.  Plaintiff further alleges that Lt. Graddy singled her out and attempted to get other supervisors to reprimand her without cause.  These acts cannot be said to be wholly unrelated to her complaints.  *See* (Doc. 12 ¶¶ 10, 21, 27, 41 and 44); *see also Allen*, 788 F.2d at 1488; *Simmons*, 757 F.2d at 1189.  As such, the Court finds that Plaintiff alleges sufficient facts to satisfy the elements of a prima facie retaliation claim.  Accordingly, the Court denies Defendant's Motion to Dismiss Count III of Plaintiff's Amended Complaint.

### D. Count IV – Family and Medical Leave Act Claim

In Count IV of her Amended Complaint, Plaintiff alleges interference and retaliation claims against Defendant under the FMLA for "failing to properly advise Plaintiff of her ability to claim leave permitted by the FMLA, and for harassing Plaintiff due to her using leave time and for taking time off that was authorized by and protected under the FMLA."  (Doc. 12 ¶ 77).  Plaintiff alleges two violations – one in 2012 and the other in 2013.

#### 1. 2012 Incident

"[A]n action may be brought under [the FMLA] not later than 2 years after the date of the last event constituting the alleged violation. . . ."  29 U.S.C. § 2617(c)(1).  However, "an action for a willful FMLA violation "may be brought within 3 years of the date of the last event constituting the alleged violation. . . ."  *Id.* § 2617(c)(2).  Plaintiff has alleged that Defendant willfully violated the FMLA.  *See* (Doc. 12 ¶¶ 13-15).  The term "willful" is not defined in the text of the FMLA statute, nor has the Eleventh Circuit defined the term in the

FMLA context.  However, Federal Rule of Civil Procedure 9(b) provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  As noted by the District Court for the Middle District of Alabama in *Maledy v. City of Enterprise*, at this stage of the litigation, "[f]ederal courts do recognize that a general averment as to willfulness is sufficient to trigger the [FMLA's] three-year statute of limitations."  No. 1:2010-CV-254-MHT, 2012 WL 1028176, at *5 (M.D. Ala. March 26, 2012) (citation omitted), *see also Perrymond v. Lockheed Martin Corp.,* No. 1:2009-CV-1936-TWT, 2010 WL 925178, at *1 (N.D. Ga. Mar. 9, 2010) (declining to adopt magistrate judge's recommendation that Plaintiff's general allegation of willfulness was insufficient to trigger the FMLA's three-year limitation because "Rule 9 allows state of mind to be alleged generally and the Plaintiff has done that.").

With regard to Plaintiff's FMLA leave request on or about April 10, 2012,[7] Plaintiff has alleged that, despite knowing that the FMLA entitled Plaintiff to leave and despite having a history of granting FMLA leave to other employees, Lt. Graddy and Chief Jennings initially refused to grant Plaintiff's FMLA leave request.  *See* (Docs. 12 ¶¶ 12-15, and 13-3).  She further alleges that she was pressured to return to work early after City Manager Bridges reversed the denial.  Therefore, Plaintiff has pled more than a "general averment" of Defendant's willfulness and thus the FMLA's three-year statute of limitation applies to Plaintiff's FMLA claim with regard to the April 2012 incident.  Plaintiff filed her original complaint in the instant action approximately twenty five months later, on May 13, 2014.  *See* (Doc. 1).  As such, Plaintiff's allegation of a willful violation of the FMLA in 2012 was timely filed within the three-year limitations period and is properly before the Court.

The Eleventh Circuit has recognized  that 29 U.S.C. § 2615(a) "creates two types of claims: interference claims, in which an employee asserts that [her] employer denied or otherwise interfered with [her] substantive rights under the Act, and retaliation claims, in which an employee asserts that [her] employer discriminated against [her] because [she] engaged in activity protected by the Act."  *Hurlbert v. St. Mary's Health Care System, Inc.*, 439 F.3d 1286, 1293 (11th Cir. 2006) (internal quotation marks omitted).

Under the FMLA's anti-interference provision, it is "unlawful for any employer to interfere with, restrain, or deny the exercise or the attempt to exercise, any right provided

---

[7] While Plaintiff conceded, in her response to Defendant's motion to dismiss the original complaint, that she did not allege sufficient facts in the original complaint to bring her claims within the three-year statute of limitations for willful FMLA violations, because the Court granted Plaintiff leave to amend her complaint, her concession does not operate to abandon

under the [FMLA]." 29 U.S.C. § 2615(a)(1).   Thus, to state a FMLA interference claim, a plaintiff must sufficiently allege that "[she] was denied a benefit to which [she] was entitled under the FMLA." *Evans v. Books-A-Million,* 762 F.3d 1288, 1295 (11th Cir. 2014).   Although Plaintiff alleges that Lt. Graddy and Chief Jennings initially refused to grant Plaintiff's request to take between two and six weeks of FMLA leave in April, 2012, Plaintiff also alleges that City Manager Bridges quickly overruled them and Plaintiff was allowed to take leave. Furthermore, although Plaintiff alleges that she only took off two weeks instead of six "because of the pressure she was under from her supervisors to return to work[,]" (Doc. 12 ¶ 15), Plaintiff fails to allege specific facts regarding which supervisor pressured her or the nature of the pressure.   She merely states that she returned early due to pressure from her supervisors.   As such, because Plaintiff fails to plead facts showing that she was ultimately denied FMLA leave and fails to allege sufficient facts to support the allegation that she was pressured into taking less leave than she needed, Plaintiff fails to state an interference claim under the FMLA with regard to the 2012 incident.   *See Goff v. State Military Dept.*, No. 2:2013-CV-60-MHT, 2013 WL 5352755, at *4 (M.D. Ala. Sept. 24, 2013) ("Because Goff admits that she took FMLA leave, she cannot demonstrate that she was denied FMLA leave for which she applied.").

Under the FMLA's anti-retaliation provision, it is "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" under the FMLA.   29 U.S.C. § 2615(a)(2).   "To establish a prima facie case of retaliation, the plaintiff must show that: (1) [she] engaged in statutorily protected activity; (2) [she] experienced an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action."   *Hurlbert* v, 439 F.3d at 1297.   Accepting Plaintiff's allegations as true, Plaintiff has alleged sufficient facts to support a retaliation claim under the FMLA.   First, Plaintiff alleges that, in April, 2012, she submitted paperwork requesting FMLA leave and took that leave.   Thus, Plaintiff's allegation establishes that she engaged in statutorily protected activity.   Second, Plaintiff alleges that, after returning from FMLA leave in April, 2012, she was denied a promotion.   (Doc. 12 ¶ 17).   Thus, Plaintiff establishes that she experienced an adverse employment action.   Third, Plaintiff alleges that she was denied a promotion approximately one month after returning from FMLA leave and

---

her FMLA claim.

was told that the denial was because of "sick leave issues." (*Id.*)  Thus Plaintiff's allegations establish a causal connection between her protected activity and the adverse action to which she was subjected.  As such, the Court finds that Plaintiff has pled sufficient facts to support a plausible inference of a violation of the antiretaliation provision of the FMLA.  Accordingly, Plaintiff's FMLA interference claim related to the 2012 incident is dismissed, but she may proceed on her retaliation claim related to the same.

### 2. 2013 Incident

Plaintiff alleges that her second request for FMLA leave, in May, 2013, was granted.  As was the case in *Goff*, "[b]ecause [Plaintiff] admits that she took FMLA leave, she cannot demonstrate that she was denied FMLA leave for which she applied."  2013 WL 5352755, at *4**.**  Thus, Plaintiff cannot state an interference claim related to the 2013 incident.  Nor does Plaintiff allege that she was retaliated against after she took leave in 2013.  Accordingly, Plaintiff's interference and retaliation claims under the FMLA that relate to the 2013 incident are dismissed.


## V.  CONCLUSION

Having considered the pleadings, the arguments of the Parties, and the applicable law, the Court **HEREBY GRANTS in part** and **DENIES in part** Defendant's Motion to Dismiss Plaintiff's Amended Complaint.  (Doc. 13).  With regard to the above claims, the Court specifically finds as follows:

1) As to Plaintiff's ADA claim, (Count I), Defendant's Motion to Dismiss is **GRANTED.**

2) As to Plaintiff's hostile work environment gender discrimination claim under Title VII, (Count II), Defendant's Motion to Dismiss is **DENIED**.

3) As to Plaintiff's disparate treatment gender discrimination claim under Title VII, (Count II), Defendant's Motion to Dismiss is **GRANTED**.

4) As to Plaintiff's retaliation claim under Title VII, (Count III),  Defendant's Motion to Dismiss is **DENIED.**

5) As to the FMLA Claims (Count IV) based on the 2012 incident:

   a. Defendant's Motion to Dismiss Plaintiff's interference claim is **GRANTED**

     b.  Defendant's Motion to Dismiss Plaintiff's retaliation claim is **DENIED**.

6)  As to the FMLA Claims (Count IV) based on the 2013 incident, Defendant's Motion to Dismiss is **GRANTED**.


     **SO ORDERED**, this __31st__ day of March, 2016.

           /s/ Leslie J. Abrams

          **LESLIE J. ABRAMS, JUDGE**
          **UNITED STATES DISTRICT COURT**